# United States District Court
# District of Massachusetts

COLLEEN ANDERSON,
    Plaintiff,

     v.                           CIVIL ACTION NO. 2010-11829-DJC

FIRST STUDENT, INC.,
JAMES QUINLAN,
LINDA BRIGGS,
    Defendants.

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) (#5), AND ORDERS ON PLAINTIFF'S MOTION FOR REMAND (#10), AND DEFENDANTS' MOTION TO STRIKE (#14)

COLLINGS, U.S.M.J.

### I. Introduction

Plaintiff Colleen Anderson ("Anderson") filed a four-count complaint in the

Plymouth County Superior Court in Massachusetts on or about August 31, 2010. (Notice of Removal #1, Complaint Exh. A and Civil Cover Sheet Attachment 3) Approximately two months later, on or about October 27, 2010, the defendants First Student, Inc. ("First Student"), James Quinlan ("Quinlan") and Linda Ames a/k/a Linda Briggs ("Ames") removed the case to the United States District Court for the District of Massachusetts at Boston (#1) and, in short order thereafter, moved to dismiss the complaint (#5). The defendants submitted a memorandum in support of their dispositive motion as well as an affidavit. (##6, 7) Anderson has filed a memorandum with exhibits opposing the motion to dismiss. (#12)

On November 18, 2010, the plaintiff filed a motion to remand (#10) this case to the state court together with a memorandum of law in support thereof. (#11) The defendants, in turn, filed a memorandum of law in opposition to the motion to remand on December 2, 2010. (#13) On even date, First Student, Quinlan and Ames also submitted a motion to strike (#14) the exhibits attached to Anderson's memorandum in opposition to the motion to dismiss as well as the plaintiff's request for certification along with a memorandum in support (#15). Four days later on December 6th, the plaintiff filed a memorandum in opposition to the motion to strike. (#16)

A hearing on was held on February 7, 2010 and at this juncture, all of the motions are ready for decision.

## II. The Facts

This recitation of facts is based upon the allegations of the complaint. Anderson, a Massachusetts resident, is employed as a bus driver by First Student, an Ohio corporation authorized to do business in the Commonwealth. (#1, Exh. A ¶¶ 1, 2, 6) At all relevant times, Anderson was a member of the United Food and Commercial Workers Union, Local 328. (#1, Exh. A ¶ 7) Defendant Ames is also employed by First Student and is the plaintiff's direct supervisor. (#1, Exh. A ¶ 3) Defendant Quinlan, another First Student employee, is Ames' direct supervisor. (#1, Exh. A ¶ 4)

The plaintiff, a bus driver for over twenty-three years, enjoyed a good personnel record at First Student with no disciplinary history. (#1, Exh. A ¶¶ 6, 8) Her job duties included picking up and dropping off school children at two elementary schools in Marlboro, MA. (#1, Exh. 1 ¶ 8) It is alleged that "[a]s a school bus driver,...Anderson is subject to certain mandatory reporting laws." (#1, Exh. A ¶ 9)

While on duty on February 2, 2009, Anderson was informed by a ten-year-

old female student on her school bus that the student's mother had pulled her hair, kicked her in the stomach and thrown her down a hallway the prior evening. (#1, Exh. A ¶ 10)  The youngster revealed that she had been subjected to such treatment in the past, but that she would get in trouble if she told anyone. (#1, Exh. A ¶ 11)  Anderson reported her conversation with the student to the assistant principal of the grammar schools, Mr. Brooks, although the plaintiff was nervous in doing so because the ten-year-old girl was the granddaughter of her supervisor at First Student, Ames. (#1, Exh. A ¶¶ 12, 13)

Two days later on February 4, 2009, Ames requested that Anderson bring her granddaughter back to the bus lot so Ames could meet with the child about the incident. (#1, Exh. A ¶ 15)  Enroute to the bus lot, the young girl told Anderson that she was afraid she was going to get in trouble so she planned to lie about what her mother had done. (#1, Exh. A ¶ 15)  Anderson advised the child that she should tell the truth. (#1, Exh. A ¶ 16)  The next day, February 5th, the young girl informed the plaintiff that she had told her grandmother the truth, but that her grandmother did not believe her. (#1, Exh. A ¶ 17)

At some point between February 5th and February 10th, Anderson informed her union stewards about the situation with Ames' granddaughter. (#1, Exh. A ¶ 18)  On or about February 10, 2009, the female student was removed from

riding on Anderson's bus. (#1, Exh. A ¶ 19)  About a month later, on or about March 4, 2009, one of the plaintiff's union stewards informed her that a meeting had been scheduled for that day which Anderson had to attend. (#1, Exh. A ¶ 21)

The meeting between Anderson, her union steward and First Student concerned the plaintiff's child abuse report regarding Ames' granddaughter. (#1, Exh. A ¶ 22)  Tim Griffin ("Griffin"), the Human Resources manager at First Student, distributed a copy of a letter drafted by the young girl's mother, Ames' daughter, in which allegations were made that Anderson engaged in inappropriate behavior with the child as well as other children under her care. (#1, Exh. A ¶ 23)  Although First Student would not take action against Anderson on account of the letter, Griffin did not know if the Middleboro School Committee would fire her. (#1, Exh. A ¶ 24)  The plaintiff left the meeting extremely upset at the false accusations. (#1, Exh. A ¶ 26)

The day after the meeting, March 5, 2009, Anderson's union steward called her to advise that Ames was threatening to have the plaintiff's job and that a lawsuit against the plaintiff was anticipated. (#1, Exh. A ¶ 31)  In May, 2009, Anderson retained an attorney. (#1, Exh. A ¶ 27)

The plaintiff had previously reported another suspected incident of child

abuse to Mr. Brooks and had never been "reprimanded, disciplined, or even corrected with regard to her action in reporting the incident." (#1, Exh. A ¶¶ 28-30)  After making the report with respect to Ames' granddaughter, Anderson alleges that she "has been and continues to be subjected to the retaliatory action" of First Student and Ames. (#1, Exh. A ¶ 34)  For example, the plaintiff learned on November 18, 2009 that Ames had announced extra work for other employees, but not Anderson even though she was second on the seniority list. (#1, Exh. A ¶ 33) Anderson claims that the retaliation resulted from the fact that Ames was the young girl's grandmother. (#1, Exh. A ¶ 37)  Quinlan is alleged to favor Ames with whom he shares a close relationship and to act unfairly toward Anderson. (#1, Exh. A ¶¶ 37-39) According to the plaintiff, neither Quinlan nor First Student have taken any steps to protect Anderson from Ames' retaliatory actions. (#1, Exh. A ¶¶ 40-41, 43)

### III. The Claims

In Count I, naming all three defendants, the plaintiff alleges a claim of illegal retaliation against a mandatory reporter in violation of Massachusetts General Laws chapter 119, § 51A.  Anderson alleges that Ames and Quinlan interfered with her business relationship with First Student in Count II.  Next, in Count III, it is alleged that First Student failed properly to supervise its employees resulting in retaliation and unlawful acts against Anderson.  Lastly, the plaintiff alleges a claim for intentional infliction of emotional distress against First Student, Ames and Quinlan in Count IV.

### IV. The Motion to Remand (#10)

The plaintiff argues that her state law claims are not preempted by the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), which was the basis upon which the case was removed from state court.  According to Anderson, this Court lacks subject matter jurisdiction over the case and, consequently, it should be remanded to the Plymouth County Superior Court.[1]

---

[1]  Title 28 U.S.C. § 1447(c) provides, in relevant part, that:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

The defendants, on the other hand, contend that this Court may exercise jurisdiction over the entire case if jurisdiction may properly be asserted over any of the four claims under the LMRA. *See* 28 U.S.C. § 1441(c)("Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates."); *Com. of Mass. v. V & M Management, Inc.*, 929 F.2d 830, 834 (1 Cir., 1991)("Once a case is properly removed, a district court has jurisdiction over the entire case."). In the defendants' view, the plaintiff's claims are preempted because all of the actions about which she complains constitute purported violations of the collective bargaining agreement ("CBA") that governs Anderson's employment relationship with First Student.

Removal is proper only if the state court action could have been filed in the federal court in the first instance. Title 28 U.S.C. § 1441; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Here the defendants assert that the

---

plaintiff's claims arise under a federal statute, 29 U.S.C. § 185, and so federal question jurisdiction exists. Section 301 of the LMRA provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." Title 29 U.S.C. § 185(a). The First Circuit has explained that:

> Under a well established exception to the 'well pleaded complaint rule,' however, any state law claim which is subject to complete preemption under Section 301 of the LMRA is considered a claim arising under federal law within the district court's jurisdiction. *See generally Caterpillar [Inc. v. Williams],* 482 U.S. [386,] 393–94, 107 S.Ct. [2425,] 2430–31 [(1987). Section 301 completely preempts a state law claim, 'if the resolution of [the] state-law claim depends upon the meaning of a collective bargaining agreement.' *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988). *See also Caterpillar,* 482 U.S. at 394, 107 S.Ct. at 2430 (section 301 completely preempts claims which are 'substantially dependent on analysis of a collective-bargaining agreement'); *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985) ('[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim

> must either be treated as a § 301 claim or dismissed as
> pre-empted by labor-contract law.') (citation omitted).
> Where such preemption is applicable, 'federal labor-law
> principles— necessarily uniform throughout the
> nation—must be employed to resolve the dispute.'
> *Lingle,* 486 U.S. at 406, 108 S.Ct. at 1881.

*Magerer v. John Sexton & Co.*, 912 F.2d 525, 528 (1 Cir., 1990).

It is clear that the burden is on the defendants to show that jurisdiction is proper: "The party invoking federal jurisdiction has the burden of establishing that the court has subject matter jurisdiction over the case. This is true generally for defendants removing to federal court." *Amoche v. Guarantee Trust Life Ins. Co.,* 556 F.3d 41, 48 (1 Cir., 2009)(internal citations omitted). Moreover, "[w]hether a given claim is completely preempted depends importantly on the elements of that claim under state law and the content of the applicable CBA." *O'Donnell v. Boggs*, 611 F.3d 50, 54 (1 Cir., 2010).

In Count II Anderson alleges a claim of interference with business relations.[2] It is alleged that after she made the report of possible child abuse,

---

[2] Because a contract exists in this case, the CBA, this claim may more properly be viewed as one for intentional interference with contractual, rather than business, relations. *See Brandon Associates, LLC v. FailSafe Air Safety Systems Corp.*, 384 F. Supp.2d 442, 445-446 (D. Mass., 2005). In any event, "[t]he substantive elements of these torts are substantially similar. See *Shafir v. Steele,* 431 Mass. 365, 370, 727 N.E.2d 1140 n. 10 (2000)." *Cavicchi v. Koski,* 67 Mass. App. Ct. 654, 657, 855 N.E.2d 1137, 1141 (2006).

Ames and Quinlan engaged "in a concerted effort to manufacture grounds upon which to have [Anderson] terminated" and "wrongfully attempted to interfere with [her employment relationship with First Student] in order to retaliate against" her. (#1, Exh. A ¶¶ 57, 58)

Under Massachusetts law,

> '[i]n order to make out a claim for interference with advantageous business relations, the plaintiff must prove that (1) [s]he had a business relationship for economic benefit with a third party, (2) the defendants knew of the relationship, (3) the defendants interfered with the relationship through improper motive or means, and (4) the plaintiff's loss of advantage resulted directly from the defendants' conduct.' *Kurker v. Hill,* 44 Mass. App. Ct. 184, 191, 689 N.E.2d 833 (1998).

*Cavicchi v. Koski*, 67 Mass. App. Ct. 654, 657, 855 N.E.2d 1137, 1141 (2006).

The First Circuit has recognized the difficulties to be sorted out when, as here, the individual defendants alleged to have interfered with the plaintiff's business relations, the plaintiff's supervisors Ames and Quinlan, are agents of the third party with whom the plaintiff had a business relationship, defendant First Student. *O'Donnell*, 611 F.3d at 54. "The problems of separating unlawful interference from management's lawful control of its employees are obvious." *O'Donnell*, 611 F.3d at 54; *Magerer*, 912 F.2d at 530.

The CBA in this case contains a broad Management Rights provision. (#7, Exh. A, Article 13 at 6)  First Student is vested in the right to direct its employees "including, but not limited to, the right to hire, promote, assign work, discipline and discharge, schedule working hours, overtime and working days, and make and enforce work rules" as well as "all of the other rights, powers and authority it exercised or possessed prior to the execution of the" CBA. (#7, Exh. A, Article 13 at 6)  Courts have relied on such clauses to find complete preemption of tortious inference claims.  *O'Donnell*, 611 F.3d at 56 n.5.

In order to decide this claim, it must be determined whether whatever actions the individual defendants are alleged to have taken were authorized within the meaning of the Management Rights provision.  Put another way, resolution of the intentional interference claim requires interpretation of the parties' rights and authority under the CBA and, as a result, is preempted under § 301. *O'Donnell*, 611 F.3d at 56; *Magerer*, 912 F.2d at 530-531.  As the First Circuit observed, such a tort claim is not the type of claim the Supreme Court has found to be protected from preemption.  *O'Donnell*, 611 F.3d at 56.

Having concluded that at least one of the claims in the complaint arises under and is preempted by the LMRA, the plaintiff's motion to remand shall be

denied.

## V.  *Defendants' Motion To Strike (#14)*

The plaintiff has appended four exhibits to her opposition to the defendants' motion to dismiss. (#12, Exh. A-D)  According to Anderson, these exhibits were submitted "NOT as evidence in chief" on the issue of whether she is a mandated reporter under the Massachusetts statute, but rather "to give context relating to the Defendants' claim of alleged lack of ambiguity as to whether Plaintiff is a mandated reporter." (#12 at 7)  The defendants move to strike these exhibits.

The four exhibits are, respectively, excerpts of a Middleborough Student Handbook 2010-2011 (Exh. A); a document on Mandated Reporting from the office of the Plymouth County District Attorney, Timothy J. Cruz (Exh. B); a document entitled Child Abuse and Neglect A Guide For Mandated Reporters from the Massachusetts Department of Social Services (Exh. C); and a document from the Massachusetts Department of Early Education and Care Technical Assistance (Exh. D).  All of these exhibits are disputed; the defendants complain that the plaintiff has failed to authenticate any of the documents. (#15 at 7)  None of these exhibits are central to the plaintiff's claims; Anderson herself states

that the exhibits have been filed for context only. (#12 at 7) None of these exhibits are referenced in the complaint.

The plaintiff contends that "the Exhibits are public documents distributed over the internet by various state agencies." (#16 at 7) However, these documents are not "official public records," as are, for example, "documents from prior state court adjudications," *Giragosian v. Ryan*, 547 F.3d 59, 66 (1 Cir., 2008)(internal quotation marks and citation omitted), *cert. denied*, 129 S. Ct. 2020 (2009) or federal statutes, *Greene v. Rhode Island*, 398 F.3d 45, 49 (1 Cir., 2005), of which the Court may take judicial notice.

In short, the plaintiff's proffered exhibits do not fall within the narrow category of documents that may be considered when deciding a Rule 12(b)(6) motion to dismiss. Consequently, the defendants' motion to strike shall be allowed.

### VI. *The Motion To Dismiss (#5)*

A motion to dismiss for failure to state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6), requires "accepting as true all well-pleaded facts in the complaint and drawing all reasonable inferences in the plaintiffs' favor." *Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 325 (1 Cir., 2009) (citation

omitted).  A party's Rule 12(b)(6) motion to dismiss challenges the ability of an opponent's complaint to state a claim.  The Supreme Court adopted the view that the complaint must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  That means that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than  labels and conclusions, and a formulaic recitation of the elements of a cause of action" is insufficient. *Bell Atlantic Corp.*, 550 U.S. at 555 (internal quotation marks, alteration  and citation omitted).  The factual allegations in the complaint must, accordingly, be specific enough to cross "the line from conceivable to plausible." *Bell Atlantic Corp.*, 550 U.S. at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted).  "Determining whether a complaint states a plausible

claim for relief [is]...a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (citation omitted). A court does not have to accept as true allegations in a complaint that are legal conclusions. *Iqbal*, 129 S.Ct. at 1949. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950.

It is axiomatic that "[t]he fate of a motion to dismiss under Rule 12(b)(6) ordinarily depends on the allegations contained within the four corners of the plaintiff's complaint." *Young v. Lepone,* 305 F.3d 1, 10-11 (1 Cir., 2002). However, in certain instances the Court may consider proffered documents even though they were not appended to the complaint without converting the motion to one for summary judgment. As the First Circuit has explained:

> While we ordinarily do not consider materials that are outside the complaint when reviewing a motion to dismiss under Rule 12(b)(6), we make 'narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.' *Watterson v. Page,* 987 F.2d 1, 3-4 (1st Cir.1993) (collecting cases illustrating this exception).

*Gargano v. Liberty Intern. Underwriters, Inc.*, 572 F.3d 45, 47 n. 1 (1 Cir., 2009);

*see also In re Citigroup, Inc.,* 535 F.3d 45, 52 (1 Cir., 2008)(citing *Curran v. Cousins,* 509 F.3d 36, 44 (1 Cir., 2007)).

Count I of the complaint is a claim for violation of Mass. Gen. L c. 119 § 51A(h) which prohibits employers from retaliating "against a mandated reporter who, in good faith, files a report." An employer who so retaliates "shall be liable...for treble damages, costs and attorney's fees." Mass. Gen. L. c. 119 § 51A(h). Anderson argues that this statute affords her an independent, nonnegotiable state right that is separate from the CBA[3] and, consequently, not preempted.

The Supreme Court has written:

> In *[Allis-Chalmers Corp. v.] Lueck,* [471 U.S. 202 (1985)] and in *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), we underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law, and we stressed that it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement, *Lueck, supra,* 471 U.S., at 213, 105 S.Ct., at 1912 (and not whether a grievance arising from 'precisely the same set of facts' could be pursued, *Lingle, supra,* 486 U.S., at 410, 108 S.Ct., at 1883) that decides whether a state cause of action may go forward.

---

[3] This document meets the *Gargano* standard. *Gargano,* 572 F.3d at 47 n. 1. The existence and content of the CBA is not contested.

> Finally, we were clear that when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished, see *Lingle, supra*, at 413, n. 12, 108 S.Ct., at 1885, n. 12 ('A collective-bargaining agreement may, of course, contain information such as rate of pay ... that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled').

*Livadas v. Bradshaw*, 512 U.S. 107, 123-124 (1994)(footnotes omitted); *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260-262 (1994).

As recently observed by the First Circuit, "[t]he Supreme Court has carved out and protected from complete preemption certain types of claims which it has variously characterized; but the common denominator is that they depend on an obligation, usually rooted in public policy, that goes beyond the interests of the individual claimant." *O'Donnell*, 611 F.3d at 56 (footnote omitted).

Chapter 119 is grounded on a fundamental public policy of the Commonwealth, to wit, "the strengthening and encouragement of family life for the care and protection of children." Mass. Gen. L. c. 119 § 1. Section 51A furthers that goal by requiring certain individuals as mandated reporters to file reports concerning the suspected abuse or neglect of children. Mass. Gen. L. c. 119 § 51A(a). As previously noted, the statute provides a cause of action against

an employer who takes retaliatory actions against a mandated reporter for having filed a report of suspected abuse or neglect. Mass. Gen. L. c. 119 § 51A(h). The "legal character" of this claim is distinct from any rights afforded by the CBA.

The defendants contend that reference must be made to CBA in order to determine if Anderson has suffered retaliation as, for example, in failing to receive extra work. (#1, Exh. A ¶ 33) The seniority list to which the plaintiff refers in the complaint arises under the CBA between the union of which she is a member and First Student. The terms of Anderson's employment are governed by that CBA. Thus, argue the defendants, whether the plaintiff was entitled to extra work and, consequently, whether not receiving extra work could be viewed as retaliation, can only be determined by examining the provisions of the CBA.

At this nascent stage of the litigation, from all that appears the meaning of terms of the CBA is not challenged or disputed in Count I. That the Court may have to reference the provisions of the CBA during the course of the litigation alone is not enough to extinguish the plaintiff's claim. *Hawaiian Airlines, Inc.,* 512 U.S. at 261 n. 8. In short, it cannot be said at this juncture that Anderson has failed to state a claim under Massachusetts law upon which

relief may be granted.[4]  This state law claim to enforce an independent, nonnegotiable right granted to mandated reporters is not preempted by the LMRA.

For the reasons stated in the context of the motion for remand, Count II of the complaint is preempted under § 301.  As discussed with the attorneys during oral argument, the plaintiff shall be granted leave to file an amended complaint.

In Count III Anderson alleges a claim of failure to supervise against First Student.  The elements of this tort are: "1) there was a duty or standard of care owed to [the plaintiff] by [the defendant company]; (2) [the defendant company's] conduct constituted a breach of such duty or violation of such standard of care; (3) [Ames'] conduct was the proximate cause of [the plaintiff's] harm; and (4) [the plaintiff] suffered actual harm." *Grant v. John Hancock Mut. Life Ins. Co.*, 183 F. Supp.2d 344, 368 (D. Mass., 2002)(citations omitted).  An agent of the defendant company, Ames, is the individual First Student purportedly failed to supervise.  As in Count II, separating the alleged

---

[4]

   The defendants have moved in the alternative to dismiss Count I on the merits, arguing that Anderson is not a mandated reporter within the meaning of the statute.  The Court shall not recommend dismissal on this ground as the mandated reporter issue can be better addressed on summary judgment after the record has been more fully developed.

tortious conduct from actions authorized under the Management Control

provision in the CBA is problematic. *O'Donnell*, 611 F.3d at 54; *Magerer*, 912

F.2d at 530. First Student's duty of care toward the plaintiff, and what conduct

would breach that duty of care, can only be determined by examining the rights

and authority of the parties under the CBA. Consequently, Count III must be

preempted. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

The final claim is one for intentional infliction of emotional distress. The

First Circuit has had occasion to address exactly such a claim:

> To prevail on that claim [of intentional infliction of
> emotional distress], [Appellant] had to prove that
> [Appellee] (1) intended to inflict emotional distress by
> (2) undertaking actions that were extreme and
> outrageous, thereby (3) causing emotional distress
> which (4) was severe. *See Wagenmann v. Adams,* 829
> F.2d 196, 213-14 (1st Cir.1987); *Agis v. Howard
> Johnson Co.,* 371 Mass. 140, 355 N.E.2d 315, 318-19
> (1976). Under Massachusetts law, 'extreme and
> outrageous conduct' is behavior that is 'so outrageous in
> character, and so extreme in degree, as to go beyond all
> possible bounds of decency, and to be regarded as
> atrocious, and utterly intolerable in a civilized
> community.' *Foley v. Polaroid Corp.,* 400 Mass. 82, 508
> N.E.2d 72, 82 (1987).
>
> [Appellee's] rights and obligations under the
> collective bargaining agreement are obviously central
> not only to an inquiry into [Appellee's] intentions, but

> also to an inquiry into whether [Appellee] conducted itself in a sufficiently outrageous manner to give rise to liability under state tort law. It is a well-settled principle that a party cannot be liable if it does no more than 'insist upon [its] legal rights in a permissible way, even though [it] was well aware that such insistence is certain to cause emotional distress.' Restatement (Second) of Torts, § 46 cmt. g (1965); *see Rush v. United Technologies,* 930 F.2d 453, 456 (6th Cir.1991).

*Flibotte v. Pennsylvania Truck Lines, Inc.,* 131 F.3d 21, 27 (1 Cir., 1997), *cert. denied,* 523 U.S. 1123 (1998); *see also Jordan v. Verizon New England, Inc.,* 180 Fed. Appx. 183, 184, 2006 WL 1277909, *1 (1 Cir., May 11, 2006)(per curiam); *Fant v. New England Power Service Co.,* 239 F.3d 8, 11 n.1 (1 Cir., 2001).

Like the intentional interference with business relations claim, the tort of intentional infliction of emotional distress is not of the character of claim the Supreme Court has seen fit to protect from preemption. *O'Donnell,* 611 F.3d at 56. Because interpretation of the CBA will be required to resolve whether the actions alleged to have been taken by the defendants were within their authority, the intentional infliction of emotional distress claim, Count IV of the complaint, is preempted.[5] *Flibotte,* 131 F.3d at 27-28.

---

[5]

The defendants also argue that the intentional infliction of emotional distress claim is barred by the exclusivity provision of the Massachusetts Workers' Compensation Act, Mass. Gen. L. c. 152 § 24. *See Green v. Wyman-Gordon,* 422 Mass. 551, 562, 664 N.E.2d 808, 815 (1996)("[T]he workers' compensation act bars the plaintiff's claims for negligent and intentional infliction of emotional distress.").

## VII. Orders and Recommendations

For all the reasons stated, it is ORDERED that Plaintiff's Motion to Remand (#10) be, and the same hereby is, DENIED. Plaintiff shall be granted fourteen (14) days to file objections to this Order with the District Judge assigned to this case.[6]

It is FURTHER ORDERED that the Defendants' Motion to Strike (#14) be, and the same hereby is, ALLOWED.

I RECOMMEND that Defendants' Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (#5) be ALLOWED with plaintiff being granted thirty (30) days within which to file an amended complaint alleging claims under § 301 of the LMRA. If the plaintiff fails to file an amended complaint within thirty (30) days of the date that the District Judge acts on this recommendation, I FURTHER RECOMMEND that the Court decline to exercise supplemental jurisdiction and REMAND Count I of the complaint to the Plymouth Superior Court. *See* Title 28 U.S.C. § 1367(c)(3).

---

[6] This motion to remand was referred to the undersigned for a ruling rather than for a report and recommendation. However, since the issue of whether a Magistrate Judge has the power to rule on a motion to remand has yet to be decided in the First Circuit, the Court has ruled on the motion and the plaintiff will have fourteen days to file an objection pursuant to 28 U.S.C. § 636(a)(1)(A) and Rule 72(a), Fed. R. Civ. P. *See Cok v. Family Court of Rhode Island*, 985 F.2d 32, 34 (1 Cir., 1993); *Unauthorized Practice of Law Committee v. Gordon*, 979 F.2d 11, 13-14 (1 Cir., 1992).

## VIII. *Review of the Report and Recommendation by the District Judge*

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b), Fed. R,. Civ. P., the parties are hereby advised that any party who objects to these recommendations *vis-a-vis* the Motion to Dismiss (#14) must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1 Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

*/s/ Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

May 12, 2011.